UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARK DAVISCOURT,

                              Plaintiff,

        v.

UNITED STATES OF AMERICA,

                              Defendant.

Case No. C20-720 RSM-MLP

REPORT AND RECOMMENDATION

## I.      INTRODUCTION

This matter is before the Court on Defendant United States of America's ("Defendant") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Mot. (Dkt. # 13).) Plaintiff filed a response (Resp. (dkt. # 21)) and Defendant filed a reply (Reply (dkt. # 22)). Having considered the parties' submissions, the governing law, and the balance of the record, the Court recommends Defendant's motion be GRANTED as explained below.

## II.      BACKGROUND

Plaintiff, proceeding *pro se*, filed a complaint on May 12, 2020, alleging violations under the Federal Torts Claims Act ("FTCA") pursuant to 28 U.S.C. §§ 1346(b)(1), 2671-2680, and seeking compensatory damages of 35,000,000.00. (Compl. (Dkt. # 1) at ¶¶ 1, 118.) The

1   complaint asserts the following causes of action: (1) common law invasion of privacy; (2)

2   intentional infliction of emotional distress; and (3) loss of enjoyment of life. (*See generally id.*)

3   Plaintiff's complaint is not entirely clear; however, his allegations primarily involve his

4   interactions with various Internal Revenue Service ("IRS") employees and Treasury Inspector

5   General for Tax Administration ("TIGTA" or "Treasury") Agent Isenberg. (*Id.*) Plaintiff also

6   asserts he has a disability resulting from his experience as a first responder to the September 11,

7   2001 terrorist attacks, and that these interactions exacerbated his disability. (*Id.*) Although

8   Plaintiff's claims involve numerous federal officials and agencies, the complaint clarifies that

9   Agent Isenberg is the sole alleged tortfeasor of the United States whose acts caused personal

10  injury to Plaintiff. (*Id.* at p. 3.)

11      The Court is mindful that it must construe a *pro se* party's pleadings liberally. *See*

12  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally

13  construed' ….") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nonetheless, *pro se*

14  litigants are still "bound by the rules of procedure." *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir.

15  1995). Thus, although the allegations in Plaintiff's complaint are not entirely clear, and the

16  organization of the complaint is disjointed at times, the Court construes Plaintiff's complaint

17  liberally. The Court summarizes the facts that, taken as true, are relevant to the resolution of the

18  instant motion.

19      This matter appears to relate to Plaintiff's previous lawsuit against federal officials who

20  worked on his tax-related matters. *See Daviscourt v. Claybrooke, et al.*, C18-1148-RAJ

21  ("*Daviscourt I*"). In that matter, Plaintiff named various federal officials, including Agent

22  Isenberg, alleging they conspired against him with regard to a dispute over the IRS' attempt to

23

collect unpaid income tax from the 2000 calendar year from Plaintiff and his wife.[1] *Id.* According to the *Daviscourt I* Court, the IRS audited the couple's taxes and found they were attempting to avoid paying income tax on capital gains from the sale of their business by improperly using a tax shelter. *Id*. at Dkt. # 38. The IRS attempted to collect this overdue tax, and the Daviscourts filed for bankruptcy in 2010. *Id.*; *see also Daviscourt v. Internal Revenue Service*, Adv. No. 10-01382-TWD (Bankr. W.D. Wash.). The Bankruptcy Court ruled that the Daviscourts would remain liable for this unpaid tax because they willfully attempted to evade or defeat the collection of the tax under 11 U.S.C. § 523(a)(1)(C). *Daviscourt v. Internal Revenue Service*, Adv. No. 10-01382-TWD (Bankr. W.D. Wash.). The *Daviscourt I* Court granted Defendants' motion to dismiss, finding Plaintiff failed to state a claim, and permitted Plaintiff leave to amend his complaint. *Id.* at Dkt. # 38. Plaintiff did not submit an amended pleading and the Court entered judgment in favor of Defendants. *Id.* at Dkt. ## 39-40. Plaintiff appealed the Court's decision which is still pending.

Although Plaintiff's complaint in *Daviscourt I* spanned over 120 pages and named numerous defendants, and the instant complaint is constrained to 39 pages accompanied by 30 exhibits, both pleadings appear to allege similar facts regarding Plaintiff's interactions with the various federal agencies noted above. (*Compare* Compl. *with Daviscourt I* at Dkt. # 1.). However, the instant matter only names the United States as a Defendant. (*See* Compl.) Plaintiff asserts that IRS Officer Steve Baker threatened, coerced, and extorted Plaintiff, in addition to attempting to steal from him and his family.[2] (*Id.* at ¶ 13.) Specifically, Plaintiff asserts that, *inter*

---

[1] The Court may take judicial notice of "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Bias v. Moynihan,* 508 F.3d 1212, 1225 (9th Cir. 2007).

1  *alia*, Officer Baker told Plaintiff to sell property for 15% of its assessed value or else the IRS

2  would seize his children and grandchildren's home and bank accounts. (*Id.*) Plaintiff also alleges

3  Officer Baker repeatedly sought to discuss Plaintiff's response to the September 11th terrorist

4  attacks even though he knew it made Plaintiff uncomfortable. (*Id.* at. ¶¶ 8-9, 23-24.) Plaintiff

5  alleges that because of this behavior, he contacted the office of Senator Patty Murray for

6  assistance. (*Id.* at ¶ 13.) Plaintiff claims that when Officer Baker became aware that Plaintiff

7  contacted Senator Murray, he became increasingly angry and continued to threaten Plaintiff and

8  his family. (*Id.* at ¶ 18.) Plaintiff also alleges Officer Baker placed an IRS levy against him on

9  September 11, 2015, presumably to provoke Plaintiff's trauma from the terrorist attacks. (*Id.* at ¶

10  24, 27.)

11  According to the complaint, Senator Murray's office made an inquiry with the IRS

12  regarding Plaintiff's allegations. (*Id.* at ¶ 31.) In response, Agent Isenberg left Plaintiff a

13  voicemail about the inquiry. (*Id.*) Plaintiff alleges he returned the call and left a message

14  informing Agent Isenberg that he was preparing documents for the Federal Bureau of

15  Investigations ("FBI") in connection with his allegations against the IRS and did not want to get

16  involved with the Treasury. (*Id.* at ¶ 32.) Plaintiff claims that Agent Isenberg called him and

17  explained that he reviewed documents provided to the IRS from Senator Murray's Office and did

18  not see any illegal activity on behalf of Officer Baker. (*Id.* at ¶ 34.) Plaintiff asserts he ended the

19  call with Agent Isenberg because he did not feel well and was focused on finding a job. (*Id.*)

20  Plaintiff alleges that despite telling Agent Isenberg that he wanted to be left alone, Agent

21  Isenberg harassed him with calls multiple times a day, demanded Plaintiff not call the FBI, and

22

23  _____

[2] The instant complaint does not clearly describe the underlying reason for the IRS and Officer Baker's involvement with Plaintiff, however, as discussed above, it appears to be based on an attempt to collect unpaid taxes from Plaintiff.

1   forcefully asserted the Treasury was the proper agency to perform the investigation into Officer

2   Baker's alleged conduct. (*Id.* at ¶ 37.) Plaintiff also claims that at some point, he called an FBI

3   agent and informed him that the Treasury had taken over the investigation. (*Id.* at ¶ 69.)

4        Plaintiff alleges he spoke with Officer Baker's supervisor, Eric Smith, and requested that

5   Officer Baker leave him alone. (*Id.* at ¶¶ 54, 57.) Plaintiff asserts that after this conversation,

6   Supervisor Smith and Officer Baker entered his property in a vehicle, broke the driver's side rear

7   window of that vehicle, and reported to Agent Isenberg that Plaintiff had caused the damage. (*Id.*

8   at ¶¶ 28, 60-61, 64-65, 70-72.) Plaintiff claims this accusation caused his mental health to

9   deteriorate and that he was no longer able to work or function. (*Id.* at ¶¶ 106-08.)

10        Plaintiff alleges that throughout Agent Isenberg's investigation, he demanded Plaintiff

11   provide him documents regarding his claims, but that Plaintiff initially refused his requests. (*Id.*

12   at ¶ 38.) Plaintiff claims that he eventually provided the documents in hope that they would show

13   Agent Isenberg that he needed protection from a federal law enforcement officer. (*Id.* at ¶ 66.)

14   Plaintiff's complaint also alleges various other interactions with Agent Isenberg, such as a

15   discussion regarding an Office in Compromise and Agent Isenberg's alleged representation that

16   he would assist Plaintiff in his attempt to "save his home." (*Id.* at ¶¶ 62, 81-83.) Plaintiff also

17   alleges Agent Isenberg informed him that Officer Baker was being considered for a potential

18   federal criminal indictment because of Officer Baker's accusations that Plaintiff shattered his

19   vehicle window. (*Id.* at ¶ 83.) Further, Plaintiff alleges he called Agent Isenberg seeking

20   assistance because he was a federal crime victim due to Officer Baker's accusations. (*Id.*)

21        Plaintiff alleges that in November 2015, Agent Isenberg informed him he was no longer

22   part of the investigation and requested that Plaintiff stop sending him documents. (*Id.* at ¶ 74.)

23   Plaintiff nonetheless sent Agent Isenberg more documents in hope that someone would assist

1    him. (*Id.* at ¶ 77.) Plaintiff claims he spoke with Agent Isenberg several more times that month,

2    with the last communication being on November 23, 2015. (*Id.* at ¶¶ 80-83.)

3        As noted above, the allegations in Plaintiff's complaint are not entirely clear. However, it

4    appears his main concern is that Agent Isenberg deterred him from seeking assistance from the

5    FBI with regard to his claims against Officer Baker and that he perceived his interactions with

6    Agent Isenberg to be threatening and caused him emotional harm due to his disability. As a

7    result, Plaintiff submitted his FTCA administrative claim on October 25, 2018. (*Id.* at ¶ 115.)

8                            **III.    DISCUSSION**

9    **A.    Subject Matter Jurisdiction**

10       *1.    Rule 12(b)(1) Legal Standards*

11       The first question that comes before the Court is the government's Rule 12(b)(1) motion

12   to dismiss. Dismissal is appropriate under Rule 12(b)(1) when the court lacks subject matter

13   jurisdiction over the claim. *See* Fed. R. Civ. P. 12(b)(1). A federal court is presumed to lack

14   subject matter jurisdiction until the plaintiff establishes otherwise. *Kokkonen v. Guardian Life*

15   *Ins. Co. of America*, 511 U.S. 375 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d

16   1221, 1225 (9th Cir. 1989). Therefore, Plaintiff bears the burden of proving the existence of

17   subject matter jurisdiction. *Stock West*, 873 F.2d at 1225; *Thornhill Publishing Co., Inc. v. Gen'l*

18   *Tel & Elect. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

19       *2.    FTCA Framework*

20       The doctrine of sovereign immunity provides that the United States is immune from suit

21   except to the extent that it consents to be sued. *United States v. Mitchell*, 463 U.S. 206, 212

22   (1983). The FTCA waives the government's sovereign immunity "for tort claims arising out of

23   negligent conduct of government employees acting within the scope of their employment."

1    *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008). The government can be sued

2    "under circumstances where the United States, if a private person, would be liable to the

3    claimant in accordance with the law of the place where the act or omission occurred." *Meier v.*

4    *Shinseki*, 626 Fed.App'x 706, 708 (9th Cir. 2015) (quoting 28 U.S.C. § 1346(b)(1)).

5         The government's waiver of its sovereign immunity is conditioned upon the claimant

6    meeting the FTCA's statutory requirements of 28 U.S.C. §§ 1346 and 2671, *et seq.* That statute

7    sets out requirements for, *inter alia*, claim presentation and the statute of limitations. "Thus, we

8    hold that section 2675(a) requires the claimant or his legal representative to file (1) a written

9    statement sufficiently describing the injury to enable the agency to begin its own investigation,

10   and (2) a sum certain damages claim." *Warren v. United States Dep't of Interior Bureau of Land*

11   *Mgmt.*, 724 F.2d 776, 780 (9th Cir. 1984) (en banc). The statute further provides that a tort claim

12   "shall be forever barred" unless it is presented to the federal agency "within two years after such

13   claim accrues." 28 U.S.C. § 2401(b).

                    *3.    Plaintiff's Claims are Untimely*

14

15         As discussed above, a claimant is required to present his administrative claim to a federal

16   agency within two years after the claim accrues. The government argues Plaintiff's claims must

17   be dismissed because they are untimely as he did not submit his claims within the required

18   period (Mot. at 6-9) and the Court agrees. It appears the last allegedly tortious interaction

19   Plaintiff had with Agent Isenberg occurred on November 23, 2015 and Plaintiff did not file his

20   FTCA administrative claim until October 25, 2018. Thus, Plaintiff failed to submit his claim

21   within the required two-year period.

22         Plaintiff concedes he did not present his claims within two years of Agent Isenberg's

23   alleged final tortious incident. (Compl. at ¶ 113.) However, Plaintiff requests the Court apply the

doctrine of equitable tolling because his mental incompetence precluded him from complying with the two-year limitation. (Resp. at 3-6.) In support of his argument, Plaintiff cites a 2016 letter from his psychologist that states that due to Plaintiff's traumatization from his response to the September 11th terrorist attacks, several communications from the IRS to Plaintiff that were either sent on, or referenced, September 11th have caused him significant psychological suffering and harm. (*Id.* (citing *id.*, Ex. 21).)

Plaintiff also presents two additional letters in support of his argument that equitable tolling applies. The first letter states Plaintiff had decreased alertness and concentration and chronic depression approximately one year into the statute of limitations. (*Id.*, Ex. C.) The second letter consists of a form from his psychologist during the statute of limitations period that asks Plaintiff be allowed a continuance in court proceedings for an action he initiated against his mortgage lender to allow Plaintiff to "heal to the point at which he is no longer in danger or disorganized and self-destructive behaviors, and thus better able to represent himself legally." (*Id.* at 5, Ex. D.) Plaintiff further asserts that both his attorney and a university clinic declined to assist him legally because they had difficulty understanding him and found his documents to be disorganized. (*Id.* at 6.)

The doctrine of equitable tolling may save a time-barred FTCA claim where extraordinary circumstances prevented the plaintiff from filing in a timely manner. *United States v. Wong,* 135 S. Ct. 1625, 1633 (2015). Federal courts apply the doctrine of equitable tolling "sparingly." *Irwin v. Dep't of Veterans Affairs*, 490 U.S. 89, 96 (1990). A plaintiff who seeks relief under the doctrine of equitable tolling bears the burden of establishing two things: first, that he was "pursuing his rights diligently," and second, that an "extraordinary circumstance" prevented him from filing within the statute of limitations. *Holland v. Florida*, 560 U.S. 631, 649

(2010). The "diligence prong" relates to those factors within the plaintiff's control, and equitable

tolling is not appropriate when "the litigant was responsible for its *own* delay." *Menominee*

*Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 756 (2016). The "extraordinary

circumstances prong," by contrast, relates to those factors outside the litigant's control. *Id.* A

plaintiff must prove both elements to demonstrate that equitable tolling is warranted. *Id.*

Here, both parties argue the test for equitable tolling due to mental impairment used in

the habeas context also applies in this matter. (Mot. at 7-8 (citing *Bills v. Clark*, 628 F.3d 1092

(9th Cir. 2010)); Resp. at 3-4 (citing *Milam v. Harington*, 953 F.3d 1128 (9th Cir. 2020)).)

In the habeas context, equitable tolling is applicable when the petitioner meets the following

two-prong test:

> (1) First, a petitioner must show his mental impairment was an "extraordinary
> circumstance" beyond his control, by demonstrating the impairment was so severe
> that either;
>> (a) petitioner was unable rationally or factually to personally understand the
>> need to timely file, or
>> (b) petitioner's mental state rendered him unable personally to prepare a
>> habeas petition and effectuate its filing.[ ]
> (2) Second, the petitioner must show diligence in pursuing the claims to the extent
> he could understand them, but that the mental impairment made it impossible to
> meet the filing deadline under the totality of the circumstances, including
> reasonably available access to assistance.

*Bills*, 628 F.3d at 1099-1100 (internal citations omitted).

The Court finds Plaintiff has failed to show equitable tolling is warranted. Plaintiff only

generally asserts that his mental incompetence precluded him from asserting his claim within the

two-year period and the letter from his psychologist similarly asserts only general statements that

Plaintiff experienced significant psychological suffering and harm. These vague assertions do not

establish that Plaintiff was pursuing his FTCA claims diligently, or that his mental impairment

made it impossible for him to submit his claim. The Court also notes that Plaintiff alleges he

became disabled in 2001 after his response to the September 11th terrorist attacks and that he continues to suffer to this day. Plaintiff has provided no explanation as to why this disability prevented him from pursing his claims in the two years following his last interaction with Agent Isenberg, even though he was able to pursue the claims three years later with the same disability. As noted by the government, Plaintiff was able to actively engage with the IRS, TIGTA, Senator Murray's office, and the FBI. Further, Plaintiff initiated and litigated *Daviscourt I* prior to submitting his FTCA claim. Plaintiff has the burden to establish he diligently pursued his claim, or that his mental impairments made it impossible to meet the filing deadline, and his general assertions fail to do so.

Further, Plaintiff has not shown factors outside his control prevented him from timely submitting his claim. Construing Plaintiff's complaint liberally, it appears the only factors that allegedly impacted his ability to timely file his claims were correspondence from the IRS on or referencing September 11th, as noted in the letter from his psychologist. Although the date associated with this correspondence may have caused Plaintiff psychological harm, the Court does not find that receiving mail on a specific date constitutes an extraordinary event warranting the application of equitable tolling. Plaintiff also fails to present any extraordinary circumstances that made him unable to understand the need to file his claim within two years or that rendered him personally unable to prepare and submit his claim within that period. Courts apply the doctrine of equitable tolling sparingly, and Plaintiff has not met his high burden to invoke equitable tolling given the alleged facts in this case. Thus, his untimely claims are time-barred and not subject to equitable tolling.

1          4.      *Discretionary Function Exception*

2          Even if Plaintiff had complied with the FTCA's statutory requirements or equitable

3   tolling applied, the government's sovereign immunity waiver is limited by a number of

4   exceptions, including the discretionary function exception which precludes any claim "based

5   upon the exercise or performance or the failure to exercise or perform a discretionary function or

6   duty on the part of a federal agency or employee of the Government, whether or not the

7   discretion involved be abused." 28 U.S.C. § 2680(a). Where the exception applies, sovereign

8   immunity is restored, and the Court does not have subject matter jurisdiction to consider the

9   plaintiff's claims under the FTCA. *Lesoeur v. United States*, 21 F.3d 965, 967 (9th Cir. 1994).

10          Courts undertake a two-step analysis in determining whether the discretionary function is

11   applicable. *Terbush*, 516 F.3d at 1129. First, the Court must determine "whether the challenged

12   actions involve an 'element of judgment or choice.'" *Id.* (quoting *United States v. Gaubert*, 499

13   U.S. 315, 322 (1991)). This first prong is not met if "a federal statute, regulation, or policy

14   specifically prescribes a course of action for an employee to follow." *Berkovitz v. United States*,

15   486 U.S. 531, 536 (1988). "If there is such a statute or policy directing mandatory and specific

16   action, the inquiry comes to an end because there can be no element of discretion when the

17   employee 'has no rightful option but to adhere to the directive.'" *Terbush*, 516 F.3d at 1129

18   (quoting *Berkovitz*, 486 U.S. at 536). The proper level of inquiry as to whether a function is

19   discretionary is "act by act." *In re Glacier Bay*, 71 F.3d 1447, 1451 (9th Cir. 1995). The question

20   "is not whether the Government as a whole had discretion at any point, but whether its allegedly

21   negligent agents did in each instance." *Id.*

22          If there is no specific course of action prescribed, then the Court must next consider

23   whether the element of choice or judgment involved in the challenged decision or action "is of

the kind that the discretionary function was designed to shield." *Berkovitz*, 486 U.S. at 536. In order to fall under the discretionary function exception, the choice or judgment exercised must be "one involving social, economic, or political policy." *Vickers v. United States*, 228 F.3d 944, 949 (9th Cir. 2000). "Because the purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, … the exception protects only governmental actions and decisions based on considerations of public policy." *Gaubert*, 499 U.S. at 323 (internal citations and quotations omitted). When "established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id.* at 324. "Both the discretionary act prong and the policy judgment prong of the discretionary function exception must be satisfied." *Sabow v. United States*, 93 F.3d 1445, 1451 (9th Cir. 1996). The government bears the burden of proving that the discretionary function exception applies. *Prescott v. United States,* 973 F.2d 696, 702 (9th Cir. 1992).

In its motion to dismiss, the government argues that the discretionary function exception to the FTCA immunizes the United States against Plaintiff's claims. (*See generally* Mot.) With regard to the first prong, the government asserts acts done pursuant to agency investigations fall within FTCA's discretionary function exception. (Mot. at 10 (citing, *e.g. Dichter-Mad Family Partners LLP v. United States*, 709 F.3d 749 (9th Cir. 2013) (where the Ninth Circuit incorporated the decision in *Dichter-Mad Family Partners, LLP v. United States*, 707 F. Supp. 2d 1016, 1035 (C.D. Cal. 2010) stating that the decisions whether and how to conduct investigations are firmly lodged in the SEC's discretion)).) The government therefore asserts that

Agent Isenberg's decision to not initiate prosecution against Officer Baker was a discretionary function. (*Id.* at 11.)

With regard to the second prong, the government asserts that TIGTA exercises oversight of the IRS pursuant to the Inspector General Act of 1978, 5 U.S.C. app. and the Internal Revenue Restructuring and Reform Act of 1998, Pub. L. No. 105-206, 112 Stat. 685 (codified as amended in scattered sections of 2 U.S.C., 5 U.S.C., 5 app., 16 U.S.C., 19 U.S.C., 22 U.S.C., 23 U.S.C., 26 U.S.C., 31 U.S.C., 38 U.S.C., and 49 U.S.C.), and that that authority includes conducting investigations into criminal violations of internal revenue law and other provisions of law relating to the IRS. (*Id.* at 11-12.) The government argues Agent Isenberg's actions were done pursuant to an investigation assigned to him in his role as a TIGTA agent, and therefore his actions are allowed by law.

Here, the Court agrees with the government. Agent Isenberg's alleged acts were done in pursuant to a TIGTA investigation. Agent Isenberg contacted Plaintiff as part of the investigation and his all his alleged interactions with Plaintiff were in connection to that investigation. Agent Isenberg's decision to not initiate a prosecution was also within his discretion as an investigating agent. The Court finds Agent Isenberg's conduct satisfies the discretionary function exception as it was done pursuant to a lawful investigation that is the type this exception was meant to shield.

Accordingly, even if equitable tolling were applied to Plaintiff's case, his claims would still be precluded by the discretionary function exception.

   a.    *Res Judicata*

The government also argues the Court lacks subject matter jurisdiction over this matter because Plaintiff's previous action, *Daviscourt I*, concerned the same underlying facts. (Mot. at 12.) *Res judicata* (claim preclusion) bars litigation in a subsequent action of any claims that were

raised or could have been raised in the prior action. *Western Radio Servs. Co. v. Glickman,* 123 F.3d 1189, 1192 (9th Cir. 1997) (*citing Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398 (1981)). "In order for res judicata to apply there must be: 1) an identity of claims, 2) a final judgment on the merits, and 3) identity or privity between parties." *Id.* (*citing Blonder–Tongue Lab. v. University of Ill. Found.,* 402 U.S. 313, 323-24 (1971)). "The central criterion in determining whether there is an identity of claims between the first and second adjudications is whether the two suits arise out of the same transactional nucleus of facts." *Frank v. United Airlines, Inc.,* 216 F.3d 845, 851 (9th Cir. 2000) (internal citations omitted).

As noted above, Plaintiff's claims in the instant matter appear to be the same as those raised in *Daviscourt I.* However, because the Court is recommending Defendant's motion be granted due to lack of subject matter jurisdiction because Plaintiff's claim is time-barred and the discretionary function exception applies, the Court need not address Defendant's *res judicata* argument.

### B.     Failure to State a Claim

#### 1.     *Rule 12(b)(6) Legal Standards*

The second question before the Court is the government's Rule 12(b)(6) motion to dismiss. Rule 12(b)(6) permits a court to dismiss a complaint for failure to state a claim. The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the

plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id*. at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### 2. *Common Law Invasion of Privacy*

Plaintiff's complaint alleges a common law invasion of privacy claim pursuant to Restatement (Second) of Torts § 652B (1977) based on Agent Isenberg's alleged intrusion into the FBI's investigation of Plaintiff's claims regarding Officer Baker and the IRS. (Resp. at 10.) The government argues this claim fails because the allegations are unsubstantiated, and Plaintiff fails to provide a factual foundation required for this type of claim. (Mot. at 15.)

Washington recognizes a claim for invasion of privacy under the common law. *Reid v. Pierce County,* 136 Wash.2d 195, 206 (1998) (*citing* the Restatement (Second) of Torts). To establish an invasion of privacy claim, a plaintiff must prove the following elements: (1) "[A]n intentional intrusion, physically or otherwise, upon the solitude or seclusion of plaintiff, or his private affairs;" (2) "[W]ith respect to the matter or affair which plaintiff claims was invaded, that plaintiff had a legitimate and reasonable expectation of privacy;" (3) "[T]he intrusion would be highly offensive to a reasonable person; and" (4) "[T]hat the defendant's conduct was a proximate cause of damage to the plaintiff ." *Doe v. Gonzaga Univ.,* 143 Wash.2d 687, 705-706

1    (2001), *reversed on other grounds,* 536 U.S. 273 (2002), *referencing* Restatement (Second) of

2    Torts § 652B (1977).

3         The Court finds Plaintiff has failed to state a claim for invasion of privacy. Plaintiff

4    asserts Agent Isenberg's request for documents in connection with his investigation constitutes

5    an intrusion into Plaintiff's affairs, citing an October 27, 2015 letter from Agent Isenberg

6    "demanding" documents from Plaintiff. (Resp. at 13). However, taking Plaintiff's claims as true,

7    Plaintiff voluntarily provided documents to Agent Isenberg, albeit begrudgingly, and therefore

8    he had no legitimate or reasonable expectation of privacy as to those documents. Thus, Plaintiff

9    has failed to meet the second element to establish an invasion of privacy claim. Further, Plaintiff

10   has not shown this alleged intrusion, done pursuant to an investigation initiated by Plaintiff's,

11   would be highly offensive to a reasonable person or that Agent Isenberg's conduct proximately

12   caused his alleged damage. Accordingly, Plaintiff's claim fails.

13                    *3.    Intentional Infliction of Emotional Distress*

14        Plaintiff also raises an intentional infliction of emotional distress claim. Specifically,

15   Plaintiff asserts that Agent Isenberg's request for documents and statements to not contact the

16   FBI constitute intentional infliction of emotional distress. Plaintiff further appears to allege that

17   Agent Isenberg's representation that he could somehow help Plaintiff "save his home"

18   constitutes intentional infliction of emotional distress, although Plaintiff's allegations regarding

19   this interaction are not entirely clear.

20        "'Outrage' and 'intentional infliction of emotional distress' are synonyms for the same

21   tort." *Kloepfel v. Bokor*, 149 Wn.2d 192, 193 n.1 (2003). The elements for the tort of outrage are

22   "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress,

23   and (3) actual result to the plaintiff of severe emotional distress." *Dicomes v. State,* 113 Wash.2d

612, 630 (1989) (quoting *Rice v. Janovich,* 109 Wash.2d 48, 61 (1987); Restatement (Second) of Torts § 46 (1965)). Conduct must go "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Grimsby v. Samson,* 85 Wash.2d 52, 59 (1975). The Court must determine whether or not reasonable minds could differ as to whether the conduct was sufficiently outrageous. *Phillips v. Hardwick,* 29 Wash.App. 382, 387 (1981).

The Court finds Plaintiff has failed to state a claim for intentional infliction of emotional distress. Taking Plaintiff's allegations as true, Agent Isenberg's actions were not extreme and outrageous, and do not show that he intentionally or recklessly inflicted emotional distress onto Plaintiff. Agent Isenberg's request for documents was part of his investigation into claims Plaintiff raised against the IRS. Further, Agent Isenberg's advisement for Plaintiff to not contact the FBI was made because TIGTA, not the FBI, was the appropriate investigative agency. This advisement does not go beyond the possible bounds of decency. Lastly, even if Agent Isenberg represented that he would somehow assist Plaintiff in saving his home, these statements alone fall short of extreme and outrageous conduct.

### 4.    *Loss of Enjoyment of Life*

Plaintiff alleges that after he provided Agent Isenberg with the documents he requested, his life started to "unravel," particularly after Agent Isenberg informed him that Officer Baker accused him of breaking the vehicle window. (Compl. at ¶¶ 105-06.) Among other things, Plaintiff was not able to accept employment opportunities, withdrew from his family, ceased contact with his friends, and began having chronic suicidal ideation. (*Id.* at ¶ 107-08.)

As discussed above, Plaintiff has not shown that Agent Isenberg's actions were tortious. Based on the allegations in the complaint, all of Agent Isenberg's actions at issue were done

pursuant to an investigation into Plaintiff's claims. In addition, Plaintiff has not shown Agent Isenberg's actions caused these circumstances in Plaintiff's life, other than to generally assert that Agent Isenberg's actions "destroyed Daviscourt's ability to turn his life around and his ability to care for his family." (*Id*. at ¶ 111.) The Court is cognizant that Plaintiff has a disability from a prior trauma, however, that alone does not establish that Agent Isenberg's investigation to help resolve Plaintiff's claims against the IRS caused the hardships in Plaintiff's life.

### C.   Leave to Amend

When a court dismisses a *pro se* plaintiff's complaint, the court must give the plaintiff leave to amend unless it is absolutely clear that amendment could not cure the defects in the complaint. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). However, a *pro se* plaintiff does not enjoy unlimited opportunities to amend his complaint. *See McHenry v. Renne*, 84 F.3d 1172, 1174 (9th Cir. 1996) (affirming the district court's dismissal of the plaintiff's third amended complaint without leave to amend when it failed to cure the pleading deficiencies).

Here, the Court recommends Plaintiff's complaint be dismissed for lack of subject matter jurisdiction, a defect Plaintiff cannot cure through an amended complaint. Accordingly, the Court recommends Plaintiff's complaint be dismissed without leave to amend.

### IV.   CONCLUSION

For the foregoing reasons, the Court recommends Defendant's motion (dkt. # 13) be GRANTED, and that this matter be DISMISSED with prejudice for lack of subject matter jurisdiction, or, alternatively, for failure to state a claim. The Court also orders that the order regarding the deadlines for initial disclosures, Rule 26(f) conference, and joint status report be stayed until a ruling is issued on the Report and Recommendation. A proposed order accompanies this Report and Recommendation.

1      Objections to this Report and Recommendation, if any, should be filed with the Clerk and

2  served upon all parties to this suit by no later than **fourteen (14)** days after the filing of this

3  Report and Recommendation. Objections, and any response, shall not exceed twelve pages.

4  Failure to file objections within the specified time may affect your right to appeal. Objections

5  should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days

6  after they are served and filed. Responses to objections, if any, shall be filed no later than

7  **fourteen (14)** days after service and filing of objections. If no timely objections are filed, the

8  matter will be ready for consideration by the District Judge on **November 25, 2020**.

9      The Clerk is directed to send copies of this order to the parties and to the Honorable

10 Ricardo S. Martinez.

11     Dated this 10th day of November, 2020.

12

13

14 _____
   MICHELLE L. PETERSON
15 United States Magistrate Judge

16

17

18

19

20

21

22

23